No. 2022-1496

_____

*In the*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

## CLAIMANT-APPELLANT'S PRINCIPAL BRIEF

*Re*

_____

### ZEKE L. BRYANT,

Claimant-Appellant,

*versus*

### DENIS MCDONOUGH,
Secretary of Veterans Affairs,

Respondent-Appellee.

_____

### ON APPEAL FROM THE
### UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS
### IN VET. APP. NO. 20-0642, JUDGE JOSEPH L. TOTH.

_____

**AMY B. KRETKOWSKI, ESQ.**
Law Office of Amy B. Kretkowski
308 E Burlington Street #415
Iowa City, IA 52240

**KENNETH M. CARPENTER, ESQ.**
Carpenter, Chartered
1525 Southwest Topeka Boulevard
Post Office Box 2099
Topeka, Kansas 66601
785-357-5251

Attorneys for Claimant-Appellant

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

BRYANT V. DVA, 2022-1496

**Certificate of Interest**

Counsel for the Claimant-Appellant certifies the following information is accurate and complete to the best of my knowledge:

1. **Represented Entities.  Fed. Cir. R. 47.4(a)(1).**

   The full name of all entities represented by undersigned counsel in this case:

   Zeke L. Bryant.

2. **Real Party in Interest.  Fed. Cir. R. 47.4(a)(2).**

   Full names of all real parties in interest for the entities.  (Do not list the real parties if they are the same as the entities):

   Same.

3. **Parent Corporations and Stockholders.  Fed. Cir. R. 47.4(a)(3).**

   Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more of stock in the entities:

   None.

4. **Legal Representatives.  Fed. Cir. R. 47.4(a)(4).**

   List all law firms, partners and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this Court  for

the entities. (Do not include those who have already entered an appearance in this court):

None.

5.   **Related Cases. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).**

The case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

None.

6.   **Organizational Victims and Bankruptcy Cases. Fed. Cir. R. 47.4(a)(6).**

Any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1( c) (bankruptcy case debtors and trustees):

None.

Date: June 21, 2022                      /s/ Kenneth M. Carpenter
                                         Kenneth M. Carpenter
                                         **CARPENTER, CHARTERED**
                                         1525 SW Topeka Blvd, P.O. Box 2099
                                         Topeka, Kansas 66601-2099
                                         (785) 357-5251
                                         carpgh@mindspring.com

# Table of Contents

**Page**

Certificate of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-ii

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v-vi

Statement of Related Cases.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Statement of Subject-Matter and Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     Nature of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.     Statement of Facts, Course of Proceedings and Disposition Below. . . 2

Summary of the Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      I.     Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      II.    The Veterans Court erred by relying upon a
misinterpretation of the provisions 38 U.S.C. § 1110. . . . . . . . . . . . . . 6

      III.   The Veterans Court erred by failing to comply with the
holding in *Hensley v. Brown*, 5 Vet.App. 155 (1993) that
interpreted the provisions of 38 C.F.R. § 3.385 . . . . . . . . . . . . . . . . . 14

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Addendum - CAVC Memorandum Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Page**

Certificate of Service............................................... 24

Certificate of Compliance.......................................... 24

# Table of Authorities

Page

## Decisions

*Artis v. District of Columbia*, 138 S. Ct. 594 (2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984). . . . . . . . . . .  7

*Conn. Nat'l Bank v. Germain,* 503 U.S. 249 (1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Frederick v. Shinseki,* 684 F.3d 1263 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Godfrey v. Derwinski,* 2 Vet.App. 352 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Hensley v. Brown,* 5 Vet. App. 155 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Moskal v. United States,* 498 U.S. 103 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Prenzler v. Derwinski,* 928 F.2d 392 (Fed. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . .  6

*United States v. Welsh,* 774 F.2d 670 (4th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Washington v. Nicholson*, 19 Vet.App. 362 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . .  20-21

## Statutes

38 U.S.C. § 1110. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

38 U.S.C. § 7292(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

38 U.S.C. § 7292( c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

38 U.S.C. §7292(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

38 U.S.C. §7292(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

**Page**

**Regulations**

38 C.F.R. § 3.385. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim


**Other**

https://www.hopkinsmedicine.org/health/conditions-and-diseases/
hearing-loss/what-is-an-audiologist (last visited June 15, 2022). . . . . . . . . . . . . . .  19

## Statement of Related Cases

Pursuant to Fed. Cir. R. 47.5, the undersigned counsel states that no other appeal has been taken in this case in or from the United States Court of Appeals for Veterans Claims before this Court or any other appellate court.

Undersigned counsel further states that he is unaware of any cases pending before this Court which would directly affect this Court's decision in this appeal.

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

## Statement of Subject-Matter and
## Appellate Jurisdiction

On September 2, 2021, the United States Court of Appeals for Veterans Claims ("Veterans Court") issued a Memorandum Decision that affirmed the October 4, 2019 decision of the Board of Veterans' Appeals ("Board") to deny the appellant Zeke L. Bryant service connection for hearing loss.  On September 23, 2021, Mr. Bryant filed with the Veterans Court a motion for reconsideration of the Memorandum Decision or in the alternative for panel review.  On November 19, 2021, the Veterans Court denied the motion for single-judge reconsideration; granted the motion for panel review; and the panel then adopted the single-judge decision as its own with one of the three-judge panel dissenting.  On February 24, 2022, Mr. Bryant timely appealed the Veterans Court decision to this Court.  This Court has jurisdiction to review this decision pursuant to 38 U.S.C. §§ 7292(a), (c).  The issues on appeal are entirely issues of law.  The Veterans Court decision appealed from is final.

## Statement of the Issues

Whether the Veterans Court erred by relying upon

a misinterpretation of the provisions of 38 U.S.C. § 1110?

Whether the Veterans Court also erred by failing to follow

the interpretation of the provisions of 38 C.F.R. § 3.385

set out in *Hensley v. Brown*, 5 Vet.App. 155 (1993)?

# Statement of the Case

## A.     Nature of the Case.

This appeal involves two questions of law.  The first is an issue of statutory interpretation of 38 U.S.C. § 1110 as it relates to the Secretary's obligation to compensate a veteran for a post-service disability.  The second concerns the rule of law established by the Veterans Court in *Hensley v. Brown*, 5 Vet.App. 155 (1993), regarding what is required by the provisions of 38 C.F.R. § 3.385.

## B.     Statement of the Facts, Course of Proceedings and Disposition Below.

Mr. Bryant had three periods of honorable active duty service.  The first was from January 5, 1965 to January 5, 1966.  Appx27.[1]  The second from January 6, 1966 to September 8, 1969.  Appx28.  And the third from January 7, 1970 to January 5, 1973. Appx29.  Mr. Bryant's service medical records report the results of several audiometric tests.  His 1965 enlistment examination shows essentially normal hearing.  Appx30-31. But his 1969 separation report shows hearing loss across all thresholds, Appx32-33, with shifts ranging from 15 to 25 decibels.  His 1970 reenlistment examination shows somewhat better hearing, except for the higher frequencies.  Appx34-35.  But again, his 1972 separation examination shows slight hearing loss across all thresholds.  Appx36-37. Lastly, his 1975 enlistment examination for reserve service shows essentially normal

---

[1] References to the Joint Appendix to be filed by the Appellant with his reply brief are cited as "Appx___ ."

hearing. Appx38-39.

In July 2013, after having submitted a claim in September 2012 for service connection of his tinnitus and hearing loss, *see* Appx45, Mr. Bryant was afforded a VA audiology examination. Appx40-44. The examiner opined that his tinnitus was related to his military noise exposure. Appx44. However, the examiner also opined that his hearing loss was not. Appx43. The reason given was that his hearing was "well within normal limits at the time of separation." *Id.* In September 2013, the VA issued a "provisional decision" that granted service connection for tinnitus, but denied service connection for hearing loss. Appx45-57. Mr. Bryant attempted to appeal this decision, Appx58, but, referring only to his post-traumatic stress disorder ("PTSD") claim, the RO rejected the appeal as invalid because the September 2013 decision was "provisional." Appx59. Nearly three years later, in May 2016, the VA issued another decision that, *inter alia*, did refer to his hearing loss claim, but continued to deny it. Appx60-70.

Mr. Bryant appealed, Appx71-72, and VA issued a Statement of the Case ("SOC") that confirmed and continued the denial of his hearing loss claim. Appx73-96. In November 2017, Mr. Bryant perfected his appeal. Appx97-104; Appx105. Mr. Bryant challenged the adequacy of the 2013 audiology examination and promised to expand upon these arguments once the veteran's legal counsel received and reviewed a copy of his claims file. Appx100-101. Nonetheless, the VA issued a supplemental SOC in December 2018 that, in pertinent part, continued to deny his claim for service

connection for hearing loss.  Appx106-111.

In January 2019, Mr. Bryant submitted additional legal argument to assert that the RO ignored the evidence and argument about his hearing loss.   Appx112-114. Specifically, Mr. Bryant asserted that any denial based on the 2013 examiner's finding that the veteran's hearing loss was normal at separation violated the Veterans Court's holding in *Hensley v. Brown*, 5 Vet.App. 155, 159 (1993).  Appx114.  He further noted that his service medical records showed that his hearing actually worsened during service, casting doubt on the 2013 examiner's negative nexus opinion.  *Id.*

On October 4, 2019, the Board issued its decision to deny Mr. Bryant service connection for hearing loss.  Appx115-126.  The Board denied his hearing loss claim because it determined he "had normal audiological examinations during his active duty service and the first objective evidence of hearing loss is not until the July 2013 VA examination." Appx123.  The Board relied on the 2013 adverse nexus opinion of the VA audiologist to conclude that Mr. Bryant's current hearing loss was not related to service. Appx122-124.  The Board failed to acknowledge or address the evidence and argument Mr. Bryant's legal representative raised and submitted to the Board.  Mr. Bryant appealed the Board's denial to the Veterans Court.

On September 2, 2021, the Veterans Court issued its Memorandum Decision that affirmed the Board's October 4, 2019 decision to deny Mr. Bryant's hearing loss claim. Appx1-6.  On September 23, 2021, Mr. Bryant filed a motion for reconsideration of the

single-judge Memorandum Decision or in the alternative for panel review.  Appx7-17.

On November 19, 2021, the Veterans Court denied the motion for single-judge

reconsideration; granted the motion for panel review; and the panel then adopted the

single-judge decision as its own with one of the three judges on the panel dissenting.

Appx18-19.  On February 24, 2022, Mr. Bryant timely appealed the Veterans Court

decision to this Court.  Appx21.

## Summary of the Arguments

Mr. Bryant presented to the Veterans Court as well as the Board an assertion that

he was entitled to service connection for his post-service disability from a bilateral

hearing loss based upon evidence of an injury to his hearing while on active duty.  In

support of this assertion he relied upon the Veterans Court's  precedential decision in

*Hensley v. Brown*, 5 Vet.App. 155, 159 (1993).  The Board failed to address altogether this

basis for Mr. Bryant's entitlement to service connection while the Veterans Court chose

to reject it.  Mr. Bryant now argues before this Court that the Veterans Court's rejection

of his argument below was erroneous because it relied upon a misinterpretation of 38

U.S.C. § 1110 to do so.  Mr. Bryant will also argue that the Veterans Court erred further

by failing to follow the holding in *Hensley v. Brown*, 5 Vet.App. 155 (1993), which

interpreted the provisions of 38 C.F.R. § 3.385 and explained how they applied to

hearing loss claims.

## Arguments

## I.

## Standard of Review.

This Court may decide all relevant questions of law in an appeal from a decision by the Veterans Court. 38 U.S.C. §7292(d)(1). This Court reviews legal determinations of the Veterans Court *de novo*. *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991). In doing so, this Court may "affirm or if the decision of the Court of Appeals for Veterans Claims is not in accordance with law, . . . modify or reverse the decision of the Court of Appeals for Veterans Claims or . . . remand the matter as appropriate." 38 U.S.C. §7292(e)(1).

## II.

## The Veterans Court erred by relying upon a misinterpretation of the provisions 38 U.S.C. § 1110.

In the decision on appeal the Veterans Court expressed the following determination about Mr. Bryant's case:

> With respect to his claim for bilateral hearing loss, he argues that the Board relied on an inadequate exam. However, because the examiner provided a sufficient rationale for his opinion, which enabled the Board to make a fully informed decision, the Court will not disturb that part of the opinion . . . .

Appx1. To reach this conclusion, the Veterans Court explained that it considered the following set of factors:

> The relevant facts are as follows: Mr. Bryant received audiological exams in 1965, 1969, 1970, 1972, and 1975. He filed a service-connection claim for hearing loss in 2012 and underwent a VA examination for hearing loss and tinnitus in 2013. The examiner diagnosed him with sensorineural hearing loss in both ears and opined that his hearing loss was less likely than not caused by his service because his hearing was "well within normal limits at time of separation" and there was "[n]o significant change in thresholds at separation." R. at 677. Subsequently, the Board denied service connection for hearing loss, finding that the 2013 exam had the "greatest probative value." R. at 12. The Board further stated that in-service audiological test results, including from his entrance and separation exams, "did not show hearing loss for VA purposes." R. at 11.

Appx5. In light of these relevant factors, however, if the Veterans Court had interpreted the provisions 38 U.S.C. § 1110 correctly, as a matter of law, they were sufficient to grant Mr. Bryant an award of service connected compensation for his post-service bilateral hearing loss. But for the Veterans Court's failure to correctly interpret the otherwise unambiguous language Congress employed upon enacting 38 U.S.C. § 1110, the Veterans Court was obligated to reverse the Board's decision and order the Secretary to grant Mr. Bryant's hearing loss claim.

This Court should readily agree. It is required to look to the plain meaning of statutes and when that plain meaning is determined, then it is the Court's job simply to apply it. *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012); *Artis v. District of Columbia*, 138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

"[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. . . . [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

The text of the statute at issue in Mr. Bryant's appeal reads as follows:

> For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, air, or space service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.

38 U.S.C. § 1110. The pertinent portions of the language used by Congress in this statute can be focused precisely to identify the critical text at issue. This language is: "For disability resulting from personal injury suffered . . . in line of duty, . . . in the active military . . . service, during a period of war, the United States will pay to any veteran thus disabled . . . ." *Id*.

Based on the relevant facts the Veterans Court expressly acknowledged, Appx5, Mr. Bryant has the post-service disability of bilateral sensorineural hearing loss diagnosed by the VA examiner in 2013. In addition, the record of proceedings before the Board

included service medical records of audiometric tests. These confirmed that his 1965 enlistment examination showed essentially normal hearing, Appx30-31, while subsequently his 1969 separation report showed hearing loss across all thresholds with shifts in range from 15 to 25 decibels. Appx32-33. As well, although his 1970 reenlistment examination showed somewhat better hearing, except in the higher frequencies, Appx34-35, his 1972 separation examination showed evidence of a slight hearing loss across all thresholds. Appx36-37. These service medical records document that Mr. Bryant suffered an injury to his hearing in the line of duty during all of his three periods of active military service which occurred during a period of war. Thus, with respect to his in-service hearing loss, he satisfied all of the requirements set out in § 1110 such that he was entitled to an award of compensation for this disability.

The foregoing is the correct interpretation of the statute. The fact that Mr. Bryant's hearing loss injury he incurred while serving on active duty may be seen as "minimal" and not actually disabling is irrelevant to this interpretation. The plain language of § 1110 **only** requires a disability resulting from such service. It does not require a "significant" disability. Nor does it require a "significant" injury or disease. The plain language of the statute imposes no qualifying terms on the disability other than it is "resulting" from an in-service injury or disease. It imposes no qualifiers on the "personal injury" or "disease" other than it occur "in line of duty" while on active duty during a period of war. In Mr. Bryant's case his hearing loss is a fact established by the

evidence of an injury to his hearing in service. This evidence exists as documented by the periodic audiometric testing he underwent while serving on active duty. That his post-service hearing loss disability continues to exist currently is confirmed by the VA hearing examination he underwent in 2013.

While the Veterans Court acknowledged a number of factors in Mr. Bryant's case as the basis for adversely deciding his hearing loss claim, the Board identified only one it related to his bilateral hearing loss. This factor essentially was just a conclusion:

> The weight of the evidence is against a finding that the Veteran's bilateral hearing loss began during service, within one year of separation from service, or was otherwise caused by his active service.

Appx117. However, at odds with this conclusion about the evidence was the Veterans Court's observation that the VA's 2013 examiner's opinion was just that, merely an opinion. This opinion was that Mr. Bryant's "hearing loss was less likely than not caused by his service because his hearing was "well within normal limits at time of separation" and there was "[n]o significant change in thresholds at separation." Appx43. This was not evidence that Mr. Bryant's bilateral hearing loss **did not** begin during service. It was an opinion that his hearing loss was less likely than not caused by his service because his hearing was well within normal limits at time of separation. As such, it provided no legitimate basis for the Veterans Court's decision to affirm the denial of Mr. Bryant's hearing loss claim.

-10-

To reiterate, the correct interpretation of § 1110, which the Veterans Court did not consider or apply in this case, requires the United States to pay any veteran compensation when disabled from personal injury suffered in line of duty in the active military service during a period of war. Thus, the following analysis expressed by the Veterans Court is in conflict with the plain language of § 1110:

> Mr. Bryant argues that the 2013 VA exam was inadequate, and the Board erred by relying on it. He contends that the examiner improperly based his opinion on the veteran's "normal" hearing results at separation. This is so, he maintains, because according to *Hensley v. Brown*, 5 Vet. App. 155, 159 (1993), VA is not precluded from awarding service connection for a current hearing disability where a separation report shows hearing was within normal limits.
>
> However, this interpretation of *Hensley* is incorrect. *Hensley* stands for the proposition that VA is not stopped from awarding service connection simply because the veteran had normal hearing at separation. *Id.* This Court made clear that "a claimant may establish direct service connection for a hearing disability initially manifested several years after separation from service on the basis of evidence showing that the current hearing loss is causally related to an injury or disease in service." *Id.* at 164. Here, contrary to the veteran's suggestion, the Board did not deny service connection merely because Mr. Bryant demonstrated normal hearing at separation; the Board denied service connection because the examiner found no relation between his current hearing loss and service. Accordingly, Mr. Bryant has not shown that the examiner's reasoning was contrary to law.
>
> Mr. Bryant also contends that the exam is inadequate because the examiner failed to discuss evidence of actual hearing loss during service. He points out that the 1969, 1970, and 1972 audiometric test results showed threshold

shifts to a certain extent. But this argument is nothing more than a disagreement with the examiner's reasoning. The examiner acknowledged that the veteran experienced some hearing loss during service, stating that there was "no *significant* change in thresholds at separation." R. at 677 (emphasis added). However, due to the small size of those threshold shifts, and the fact the veteran's hearing was "well within normal limits at time of separation," the examiner concluded that the veteran's hearing loss at the time of the 2013 exam was less likely than not related to his service. *Id.* Ultimately, the examiner considered the veteran's medical history, relied on the correct facts, and provided a sufficient rationale for his opinion, which enabled the Board to make a fully informed decision; thus, the Board did not err by relying on the 2013 exam. *See Sharp*, 29 Vet.App. at 31.

The Court is also unconvinced that the Board ignored test results showing some amount of hearing loss during service. The Board considered the audiological test results from 1969, 1970, and 1972, but found that they "did not show hearing loss for VA purposes." R. at 11. In other words, the Board—like the examiner—seemingly acknowledged the occurrence of threshold shifts in service but did not believe that these shifts warranted service connection, given that the veteran's hearing remained within normal limits during service and at time of separation and it was not until the 2013 exam that the veteran exhibited hearing loss as defined under VA regulations. R. at 11-12. Ultimately, the Board based its opinion on the 2013 exam in denying service connection and the veteran has not shown that exam to be inadequate. The veteran may disagree with the rationale behind the VA examiner's opinion and the Board's reliance on that opinion, but he has not shown that such analysis was clearly erroneous or contrary to law.

Appx5-6. The foregoing analysis expressed by the Veterans Court amounts to a

misinterpretation of § 1110 because it permits the Board to rely upon a VA examiner's

opinion that conflicts with the plain language of § 1110.

A "disability resulting from personal injury suffered … in line of duty" requires only evidence of (1) an in-service "injury" followed by (2) a disability. The only limiting language Congress imposed on the "disability" for which compensation would be paid is that "the disability" cannot be "a result of the veteran's own willful misconduct or abuse of alcohol or drugs." A "disability resulting from personal injury suffered … in line of duty" does not require evidence of "causation." It simply requires a disability to follow from a "personal injury … in line of duty." Under the interpretation relied upon by the Board and the Veterans Court, the "disability resulting" from an in-service injury must reach a certain (unspecified) severity level while on active duty or there must be medical evidence that being on active duty caused the post-service disability.

Congress did not use the term "cause or caused." Congress used the phrase "disability resulting from personal injury suffered … in line of duty." This phrase does not equate to a requirement for claimants to produce evidence of the "causation" of a post-service hearing loss. The inescapable prejudice to Mr. Bryant that results from the Veterans Court's implicit misinterpretation of § 1110 was to require evidence of "causation" of his post-service hearing loss rather than evidence of a "disability resulting from" an injury to his hearing which occurred while on active duty during a period of war. *See* 38 U.S.C. § 1110. In so doing, the Veterans Court imposed a higher evidentiary requirement on Mr. Bryant for his claim to succeed than did Congress.

In sum, the correct interpretation of § 1110 is that Congress shall pay compensation when there is evidence of a personal injury suffered in line of duty in the active military service, during a period of war, which results in a disability either while on active duty or becomes disabling after discharge.  The effect of the interpretation of § 1110 the Board and Veterans Court relied upon would require Mr. Bryant to show that his hearing loss injury reached some unspecified level of disability while he was on active duty or there is medical evidence that being on active duty caused the post-service disability.  This interpretation is not consistent with the plain language used by Congress upon enacting § 1110.  This interpretation imposes a higher evidentiary burden upon veterans to establish service connection never intended by Congress when it enacted § 1110.  Therefore, it was an obvious error law for the Veterans Court to affirm the Board's denial of Mr. Bryant's bilateral hearing loss claim.  But for the Veterans Court's clear error of law to misinterpret § 1110,  it would have reversed the Board's denial of Mr. Bryant's bilateral hearing loss claim.

### III.

**The Veterans Court erred by failing to comply
with the holding in *Hensley v. Brown*, 5 Vet.App. 155 (1993)
that interpreted the provisions of 38 C.F.R. § 3.385.**

In *Hensley*, *ibid.*, the Veterans Court addressed the "Requirements for Establishing Service Connection for Hearing Loss."  *Id.* at 158-60.  This portion of the *Hensley* decision followed from the Veterans Court's order in that case directing the Secretary

-14-

to address in a memorandum how the Secretary's regulation at 38 C.F.R. § 3.385 (1991) was to be interpreted. More precisely, the Veterans Court directed the Secretary to address whether, pursuant to § 3.385, service connection for hearing loss can be established **only** when the level of hearing loss evidenced by audiometric and speech recognition testing meets that regulation's threshold criteria **at the time of the veteran's separation from service**. Based in large part on the Secretary's response, the Veterans Court held that it agreed "with the Secretary's assertion that [§] 3.385 does **not** preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service." *See id.* at 159 (emphasis added).

Before the Board, pointing directly to *Hensley*, Mr. Bryant asserted that any decision to deny his hearing loss claim based on the 2013 VA examiner's finding that his hearing loss was normal at separation manifestly violated the holding in *Hensley*. Appx114. The Board ignored this argument. Before the Veterans Court, Mr. Bryant made the same argument. Appx137-139; Appx146; and Appx162-163. Additionally in the Motion for Reconsideration, Appx7-17, this argument was made in support of reconsideration. Appx10-16. In the November 19, 2021 *Per Curium Order*, Judge Pietsch in her dissent recognized that Mr. Bryant's appeal presented a legal question that would clarify the precedent established in *Hensley*. Appx19. Although the Veterans Court acknowledged this argument, it nonetheless determined in error that Mr. Bryant's interpretation of *Hensley* was incorrect. Appx5. This was a clear error of law that

requires this Court to reverse the Veterans Court's decision.

Instead of following the interpretation of § 3.385 contained in the holding in *Hensley* as cited by Mr. Bryant in his brief, the Veterans Court erroneously relied on other language in *Hensley* that essentially was *dicta* and not part of the principal holding in that case. *See* 5 Vet.App. at 164 (plausible basis exists for Board's finding that hearing loss did not manifest in service or within one-year presumptive period, and thus it is not clearly erroneous, "[h]owever that finding does not end the inquiry"). The Veterans Court in *Hensley* made clear that the evidence in that case could be found sufficient for an award of service connection on a direct basis upon application of § 3.385. *Id.* In accordance with the interpretation of § 3.385 made in *Hensley* by the Veterans Court, it is clear that § 3.385 does not prohibit an award of service-connected disability compensation for Mr. Bryant's bilateral hearing loss. To the contrary, the evidence of record establishes service connection for a current or post-service disability on a direct basis. The Veterans Court in *Hensley* interpreted § 3.385 to mean that when audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a "disability" for VA compensation/rating purposes at the time of separation, a veteran may nevertheless subsequently establish service connection for a current or post-service disability resulting from the in-service injury. *See id.* at 160.

The Veterans Court's error in not following the interpretation of § 3.385 made in *Hensley* is confirmed by the following passage from the decision on appeal:

> Here, contrary to the veteran's suggestion, the Board did not deny service connection merely because Mr. Bryant demonstrated normal hearing at separation; **the Board denied service connection because the examiner found no relation between his current hearing loss and service**.

*See* Appx5 (emphasis added). The Veterans Court was simply wrong. The Board did not deny Mr. Bryant service connection because the examiner found no relation between his current hearing loss and service. To the contrary, the Board's conclusion of law that "[t]he criteria for service connection for bilateral hearing loss have not been met" was based upon a single finding of fact:

> **The weight of the evidence is against a finding that the Veteran's bilateral hearing loss began during service**, within one year of separation from service, or was otherwise caused by his active service.

*See id.* (emphasis added). This not a factual argument and Mr. Bryant does not ask this Court to review the Board's or the Veterans Court's factual findings. Mr. Bryant is simply identifying that there was only a single finding of fact made by the Board which, illustrates the incorrect legal analysis made by the Veterans Court.

In the reasons or bases portion of the Board's decision, the Board made two relevant concessions about the facts and evidence that directly tie Mr. Bryant's case to the seminal holding in *Hensley*:

> **It is not disputed that he now has hearing loss for VA purposes**. It is also not disputed that the Veteran experienced military noise exposure during his active service.

*See* Appx123 (emphasis added).    The Board's concession that Mr. Bryant had a post-service disability from his bilateral hearing loss undebatably implicated § 3.385 as interpreted by the Veterans Court in *Hensley*.    Thus, the Board and the Veterans Court both agreed that Mr. Bryant now has a current disability; that he experienced noise exposure in service; and that his service records show hearing loss during service. In other words, he has a "disability resulting from personal injury suffered … in line of duty." 38 U.S.C. § 1110.    Moreover, without question, both the single-judge author of the Memorandum Decision on appeal, as well as the panel which adopted the single-judge decision, were all bound to follow the holding in *Hensley*.

Furthermore, regarding the record evidence, the Board stated it found ". . . the greatest probative value in the July 2013 VA examiner's opinion." *Id.*    This explicit finding further demonstrates that the Board was not denying Mr. Bryant service connection because the VA examiner found no relation between his current hearing loss and service.    It appears that the Board equated its finding that the greatest probative value resided in the July 2013 VA examiner's opinion as being the same as evidence against a finding that Mr. Bryant's bilateral hearing loss began during service or was otherwise caused by his active service.    This is a false equivalency.    The opinion actually expressed by the VA examiner in this case was terse and otherwise very limited.    *See* Appx40-44.    This evidence the Board found to be of great probative value upon which it relied was barely two sentences long and presented on a preprinted VA form provided

to the VA examiner to "fill in." Appx40-44. The title of this preprinted form was, "Hearing loss and Tinnitus Disability Benefits Questionnaire." Appx40.

As opposed to a competent and probative medical opinion, what the Board relied upon is more accurately described as a form which was completed as part of an in-person examination by an individual who signed this form identifying himself as an audiologist.[2] Appx44. If an audiologist is a health care professional who identifies, assesses and manages disorders of hearing, balance and other neural systems, then why would the Board rely on an otherwise unsubstantiated opinion which was nothing more that the placement of an "X" in front of the word "No" in a preprinted form below the header "3. Etiology". Worse yet, this preprinted form (not the actual VA examiner), asks "If present, is the Veteran's hearing loss at least as likely as not (50% probability or greater), caused by or a result of an event in military service?" Appx43.

The VA audiologist provided the following rationale for having marked "No" on the preprinted form in response to the above question, "…is the Veteran's hearing loss at least as likely as not (50% probability or greater), caused by or a result of an event in military service?":

> Hearing well within normal limits at time of separation.

---

[2] Audiologists are health care professionals who identify, assess and manage disorders of hearing, balance and other neural systems. *See* https://www.hopkinsmedicine.org/health/conditions-and-diseases/hearing-loss/what-is-an-audiologist (last visited June 15, 2022).

ASA/ISO conversion done. No significant change in thresholds at separation.

*Id.* This purported rationale does not explain why the audiologist placed an "X" in front of the word "No" on a preprinted form below the header that reads: "3. Etiology". In accordance with the interpretation of § 3.385 set out by the Veterans Court in *Hensley*, when audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a "disability" at that time, the veteran may nevertheless establish service connection for a current or post-service disability. *See Hensley*, 5 Vet.App. at 160. In light of this rule of law, the VA examiner's rationale that Mr. Bryant's hearing was well within normal limits at time of separation is utterly meaningless. More importantly, that Mr. Bryant's hearing may have been well within normal limits at the time of separation does not provide a rationale for the audiologist to mark "No" in response to the query, "If present, is the Veteran's hearing loss at least as likely as not (50% probability or greater) caused by or a result of an event in military service?" Neither would the rationale that there was no "significant" change in thresholds at separation.

In light of the foregoing, the VA examiner's evidence has **<u>no</u>** probative value, let alone the "greatest" probative value. The probative value of evidence is its "tendency . . . to establish the proposition that it is offered to prove. Evidence has probative value if it tends to prove the issue in dispute." *Washington v. Nicholson*, 19 Vet.App. 362, 368

(2005) (citing *United States v. Welsh*, 774 F.2d 670, 672 (4th Cir. 1985)).  With respect to the issue of whether Mr. Bryant's resulting disability from bilateral hearing loss was related to the injury to his hearing he incurred while on active duty, the VA examiner's 2013 opinion report has no probative value at all.  It was error for the Board and the Veterans Court to point to it as evidence that would support their respective decisions to affirm the denial of Mr. Bryant's hearing loss claim.

What is probative is the Board's explicit concession, based on the record evidence, that Mr. Bryant has bilateral hearing loss for VA purposes.  Appx123.  Also probative is Mr. Bryant's in-service noise exposure, as conceded by the Board, Appx123, also his service medical records, Appx30-31, Appx32-33, Appx34-35, and Appx36-37, that document his actual suffering of an injury to his hearing in the line of duty while on active service during a period of war.  Based on this uncontested evidence, in conjunction with the interpretation made by the Veterans Court in *Hensley*, when audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a "disability" at that time, as a matter of law the veteran may nevertheless still establish service connection for a current or post-service disability that is causally related to service.  *Hensley*, 5 Vet.App. at 160.

As noted in *Hensley*, as the Veterans Court similarly held in *Godfrey v. Derwinski*, 2 Vet.App. 352, 356 (1992), where there was no evidence of the veteran's hearing disability until many years after separation from service, "[i]f evidence should sufficiently

demonstrate a medical relationship between the veteran's in-service exposure to loud noise and his current disability, it would follow that the veteran incurred an injury in service; the requirements of section 1110 would be satisfied." Here, the evidence is sufficient to demonstrate a medical relationship between Mr. Bryant's injury to his hearing in line of duty during his active military service during a period of war and his post-service disability from bilateral hearing loss. In these circumstances the requirements of § 1110 have been satisfied and the United States shall pay compensation.

## Conclusion

For the foregoing reasons, the Court should reverse the decision of the Veterans Court and instruct the Veterans Court to vacate the Board's October 4, 2019 decision which denied Mr. Bryant service connection for his post-service disability from bilateral hearing loss.

Respectfully Submitted,

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

Attorney for Claimant-Appellant

ADDENDUM - CAVC MEMORANDUM DECISION

*Designated for electronic publication only*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 20-0642

ZEKE L. BRYANT, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before TOTH, *Judge*.

**MEMORANDUM DECISION**

*Note: Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

TOTH, *Judge*: Army veteran Zeke L. Bryant appeals a Board decision that (1) denied his request to reopen a previously denied service-connection claim for an upper respiratory disorder, and (2) denied service connection for bilateral hearing loss. He argues that the Board impermissibly narrowed the scope of his upper respiratory claim when deciding whether to reopen it. The Court agrees. The Board has an obligation to liberally construe a veteran's filings, such as a request to reopen a previously denied claim, and the Board violated this obligation when it treated the veteran's original claim as a claim for chronic obstructive pulmonary disease (COPD) rather than an upper respiratory condition. With respect to his claim for bilateral hearing loss, he argues that the Board relied on an inadequate exam. However, because the examiner provided a sufficient rationale for his opinion, which enabled the Board to make a fully informed decision, the Court will not disturb that part of the opinion and remands only the claim for an upper respiratory disorder.[1]

---

[1] The Board also granted a service-connection claim for an acquired psychiatric disorder, which is a favorable determination that this Court will not disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170-71 (2007), *aff'd in part and dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009).

# I. RESPIRATORY CONDITION

Mr. Bryant served from 1965 to 1969 and 1970 to 1973. The veteran's service treatment records show that he had chest pain starting in October 1967, which was diagnosed as a pulmonary embolism with infarction due to an unknown cause. In December 2008,[2] he filed a service-connection claim for an "upper respiratory condition" that he claimed began in 1967. R. at 906. He underwent a VA examination in April 2009 and was diagnosed with atypical chest pain and mild COPD. The examiner opined that the veteran's COPD was more likely related to his long history of smoking and not his in-service embolism and that his atypical chest pain was less likely than not related to the chest pain that he experienced during service.

In May 2009, the regional office (RO) relied on the April exam to deny Mr. Bryant's service-connection claim for an upper respiratory condition, finding that his condition was not related to service. In September 2012, the veteran filed a claim to reopen his service-connection claim for an upper respiratory condition. He submitted VA medical records showing ongoing complaints of chest pain and chest congestion, with diagnoses of atypical chest pain and gastroesophageal reflux disease (including a June 2009 primary care note showing chest pain, a March 2009 primary care note indicating that he was seen in urgent care in 2008 for chest pain in the last week, a March 2011 primary care note showing that he had chest congestion for the past two to three weeks, and a January 2016 primary care note indicating that he experienced some chest congestion since November 2015). In October 2019, the Board declined to reopen the "service connection claim for COPD," finding that the additional medical evidence since the 2009 denial was not material because "it did not suggest a nexus between his COPD and active service." R. at 7-8. This appeal followed.

The Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured. 38 C.F.R. § 3.156(a) (2021). New evidence means "evidence not previously part of the actual record before agency adjudicators." *Id.* Material evidence means existing evidence "that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim." *Id.* New and material evidence "can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim." *Id.* A determination that new and material evidence has not been

---

[2] The Board decision incorrectly states that he filed his claim in December 2009.

submitted is reviewed under the "clearly erroneous" standard. *Sauviso v. Nicholson*, 19 Vet.App. 532, 533 (2006). "A factual finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Sharp v. Shulkin*, 29 Vet.App. 26, 31 (2017).

Mr. Bryant argues that the Board erred by narrowing the scope of his claim to COPD for purposes of determining whether the additional evidence at issue was sufficient to reopen his original claim for an upper respiratory condition. He argues that the evidence added to the record since the 2009 rating decision—showing complaints of chest pain and chest congestion—is sufficient to reopen his claim for an upper respiratory condition not limited to COPD.

The Court agrees that the Board wrongfully narrowed the scope of his claim. The Board's narrow reading of the veteran's claim runs afoul of *Clemons v. Shinseki*, which states that a claim for benefits includes all conditions that may be "reasonably encompassed by the claimant's description of the claim, the symptoms the claimant describes, and the information the claimant submits or the Secretary obtains in support of the claim." 23 Vet.App. 1, 5 (2009). The veteran originally filed a claim for an upper respiratory condition. Yet, the Board stated that he filed a claim "for COPD" and construed his request to reopen that claim as pertaining only to service connection for COPD. R. at 7. The Board never considered whether other conditions might be "reasonably encompassed" by Mr. Bryant's request to reopen his claim for an upper respiratory disorder. *Clemons*, 23 Vet.App. at 5.

The Board also limited the scope of the claim when discussing whether the additional evidence at issue was new and material. The Board reasoned that this evidence "is not new in that it was known that the Veteran had a diagnosis of COPD, and the evidence is not material in that it does not suggest a nexus between his COPD and active service." R. 8. However, to be new and material, evidence does not have to relate to each previously unproven element of a claim. *Shade v. Shinseki*, 24 Vet.App. 110, 121 (2010). Rather, VA must reopen a claim when a claimant submits new and material evidence "as to *an* unestablished fact from the previously denied claim. *Id.* (emphasis added). Here, the Board erred by not considering whether the additional evidence submitted since the 2009 rating decision might be new and material by proving an unestablished fact, that is, the existence of an upper respiratory condition other than COPD. *See id.* Remand is warranted for the Board to address this oversight.

The Secretary argues that reliance on *Clemons* is misplaced and suggests that the Court should limit the holding of *Clemons* to the scope of initial claims, not requests to reopen previously

3

denied claims. However, in *Murphy v. Wilkie*, the Federal Circuit flatly rejected this interpretation, holding that a veteran's request to reopen "falls squarely within the purview" of the *Clemons* lenient-claim-scope rule. 983 F.3d 1313, 1319 (Fed. Cir. 2020). The proper inquiry in reviewing a pro se claimant's request to reopen is "to determine what diagnoses, conditions, or illnesses can reasonably be understood as included in the request, this inquiry informed by, but not limited to, looking to what the particular veteran could have reasonably expected to have included in the filing of such a request and the evidence of record." *Id.* As the veteran suggests, failure to apply this inquiry would allow VA to narrow the scope of a veteran's claim to a specific diagnosis made by a VA examiner and then later decline to reopen the broader claim based on that specific diagnosis, even though there is subsequent medical evidence of other conditions that are similar to the in-service complaints.

Here, it is clear that the Board defied its obligations under *Murphy* and *Clemons*. Rather than determine what diagnoses, conditions, or illnesses might be included in the original and broader claim for an upper respiratory condition, it narrowly construed the veteran's request to reopen as pertaining only to COPD. *See Murphy*, 983 F.3d at 1319. It never considered whether the veteran's request to reopen his claim for an upper respiratory disorder could "reasonably be understood" as including respiratory conditions other than just COPD. *See id.* Accordingly, remand is warranted for the Board to conduct a "proper inquiry," per *Murphy*, that addresses the full scope of the veteran's claim. 983 F.3d at 1319.

The Secretary further argues that the additional evidence is cumulative and redundant of existing record evidence at the time of the 2009 RO decision. This is so because the April 2009 VA examiner considered chest pain and noted shortness of breath, crackles, and a moderate obstructive ventilatory defect, and the 2009 rating decision acknowledged atypical chest pain. However, the Court need not consider the merit of this argument because such determinations are for the Board to make in the first instance. As discussed above, the Board failed to meaningfully engage with the substance of the additional evidence submitted since the 2009 decision. It dismissed the additional evidence as a whole simply because, at the time of the 2009 decision, "it was known that the Veteran had a diagnosis of COPD." R. at 8. The Board never mentioned the reports of chest pain and congestion found in the additional evidence, and again, it never considered whether that newly acquired evidence might establish the existence of a respiratory condition other than COPD. Thus, the Court will remand the case and let the Board make that determination in the first place.

## II. HEARING LOSS

Next, Mr. Bryant appeals the Board's denial of service connection for bilateral hearing loss. The relevant facts are as follows: Mr. Bryant received audiological exams in 1965, 1969, 1970, 1972, and 1975. He filed a service-connection claim for hearing loss in 2012 and underwent a VA examination for hearing loss and tinnitus in 2013. The examiner diagnosed him with sensorineural hearing loss in both ears and opined that his hearing loss was less likely than not caused by his service because his hearing was "well within normal limits at time of separation" and there was "[n]o significant change in thresholds at separation." R. at 677. Subsequently, the Board denied service connection for hearing loss, finding that the 2013 exam had the "greatest probative value." R. at 12. The Board further stated that in-service audiological test results, including from his entrance and separation exams, "did not show hearing loss for VA purposes." R. at 11. This appeal followed.

Mr. Bryant argues that the 2013 VA exam was inadequate, and the Board erred by relying on it. He contends that the examiner improperly based his opinion on the veteran's "normal" hearing results at separation. This is so, he maintains, because according to *Hensley v. Brown*, 5 Vet.App. 155, 159 (1993), VA is not precluded from awarding service connection for a current hearing disability where a separation report shows hearing was within normal limits.

However, this interpretation of *Hensley* is incorrect. *Hensley* stands for the proposition that VA is not stopped from awarding service connection simply because the veteran had normal hearing at separation. *Id.* This Court made clear that "a claimant may establish direct service connection for a hearing disability initially manifested several years after separation from service on the basis of evidence showing that the current hearing loss is causally related to an injury or disease in service." *Id.* at 164. Here, contrary to the veteran's suggestion, the Board did not deny service connection merely because Mr. Bryant demonstrated normal hearing at separation; the Board denied service connection because the examiner found no relation between his current hearing loss and service. Accordingly, Mr. Bryant has not shown that the examiner's reasoning was contrary to law.

Mr. Bryant also contends that the exam is inadequate because the examiner failed to discuss evidence of actual hearing loss during service. He points out that the 1969, 1970, and 1972 audiometric test results showed threshold shifts to a certain extent. But this argument is nothing more than a disagreement with the examiner's reasoning. The examiner acknowledged that the veteran experienced some hearing loss during service, stating that there was "no *significant* change

5

in thresholds at separation." R. at 677 (emphasis added). However, due to the small size of those threshold shifts, and the fact the veteran's hearing was "well within normal limits at time of separation," the examiner concluded that the veteran's hearing loss at the time of the 2013 exam was less likely than not related to his service. *Id.* Ultimately, the examiner considered the veteran's medical history, relied on the correct facts, and provided a sufficient rationale for his opinion, which enabled the Board to make a fully informed decision; thus, the Board did not err by relying on the 2013 exam. *See Sharp*, 29 Vet.App. at 31.

The Court is also unconvinced that the Board ignored test results showing some amount of hearing loss during service. The Board considered the audiological test results from 1969, 1970, and 1972, but found that they "did not show hearing loss for VA purposes." R. at 11. In other words, the Board—like the examiner—seemingly acknowledged the occurrence of threshold shifts in service but did not believe that these shifts warranted service connection, given that the veteran's hearing remained within normal limits during service and at time of separation and it was not until the 2013 exam that the veteran exhibited hearing loss as defined under VA regulations. R. at 11-12. Ultimately, the Board based its opinion on the 2013 exam in denying service connection and the veteran has not shown that exam to be inadequate. The veteran may disagree with the rationale behind the VA examiner's opinion and the Board's reliance on that opinion, but he has not shown that such analysis was clearly erroneous or contrary to law.

### III. CONCLUSION

For the foregoing reasons, the Court VACATES the portion of the October 4, 2019, Board decision declining to reopen the claim for an upper respiratory disorder, and REMANDS that matter for further adjudication consistent with this opinion. The Court AFFIRMS the portion of the decision denying service connection as to hearing loss.

DATED: September 2, 2021

Copies to:

Amy B. Kretkowski, Esq.

VA General Counsel (027)

## Certificate of Service

I certify that on the 21st day of June, 2022, the foregoing opening brief was electronically filed through CM/ECF system with the Clerk, United States Court of Appeals for the Federal Circuit. Copies of the document were served through the Court's CM/ECF system via the Notice of Docket Activity to:

> Daniel D. Falknor, Esq.
> Department of Justice
> Civil Division, Commercial Litigation Branch
> daniel.d.falknor@usdoj.gov

> /s/ Kenneth M. Carpenter
> Kenneth M. Carpenter
> **CARPENTER, CHARTERED**
> 1525 SW Topeka Blvd, P.O. Box 2099
> Topeka, Kansas 66601-2099
> (785) 357-5251
> carpgh@mindspring.com

## Certificate of Compliance

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, Appellant's counsel certifies that this Brief complies with the Court's type-volume limitation rules. This brief was printed in Garamond font at 14 points. According to the word-count calculated, using WordPerfect v. X6, this Brief contains a total of 5589 words, which is within the 14,000 word limit.

> /s/ Kenneth M. Carpenter
> Kenneth M. Carpenter
> **CARPENTER, CHARTERED**
> 1525 SW Topeka Blvd, P.O. Box 2099
> Topeka, Kansas 66601-2099
> (785) 357-5251
> carpgh@mindspring.com